1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES B. FORD,

11            Petitioner,            No. CIV S-05-0366 MCE EFB P

12       vs.

13   A. P. KANE, Warden,

14            Respondent.        FINDINGS & RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2003 judgment of conviction

18   entered against him in the Solano County Superior Court for inflicting corporal injury on the

19   mother of his minor child.[1]  He claims that the trial court violated his Sixth Amendment right to

20   confront the witnesses against him and his Fourteenth Amendment right to due process when it

21   admitted into evidence hearsay statements made by the victim.  Upon careful consideration of

22   the record and the applicable law, the undersigned recommends that petitioner's application for

23   habeas corpus relief be denied.

24   ////

25   _____

26        [1] Petitioner was also convicted of possession of methamphetamine.  He does not
     challenge that conviction.

1

**I.     Procedural and Factual Background**[2]

Charles Benjamin Ford (Ford) appeals from a judgment of conviction and sentence after he was found guilty of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and corporal injury to his child's parent (Pen.Code, § 273.5, subd. (a)). He contends the victim's hearsay remarks to a police officer were erroneously admitted under Evidence Code section 1370, claiming (1) the People failed to establish the victim was unavailable as a witness, and (2) admission of the evidence violated his Sixth Amendment right to confront and cross-examine adverse witnesses.  In addition, Ford contends, his attorney rendered ineffective assistance if he waived his objection to the victim's statement on constitutional grounds.

We will affirm the judgment.

I. FACTS AND PROCEDURAL HISTORY

Ford's sentence was imposed after he was found guilty in two separate criminal proceedings.

**A. Case No. 160027 (Possession of Methamphetamine)**

An information filed on June 28, 2002, in case No. 160027 charged Ford with possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  The information further alleged that Ford was on bail at the time of the offense (Pen.Code, § 12022.1) and had two prior prison terms (Pen.Code, § 667.5, subd. (b)).  An amended information added a prior strike conviction allegation (Pen.Code, §§ 667, subds.(b)-(I) & 1170.12, subds. (a)-(e)).

Ford waived his right to a jury trial.  The court found him guilty of possession of methamphetamine and found the enhancement and strike allegations to be true.  Ford does not assert error with respect to his conviction in case No. 160027.

**B. Case No. 160374 (Corporal Injury on Mother of His Child)**

By information filed on June 26, 2002, Ford was charged with burglary (Pen.Code, § 459) and corporal injury on the mother of

---

[2]  The following summary is drawn from the November 10, 2004 opinion by the California Court of Appeal for the First Appellate District (hereinafter "Opinion"), at pages 1-4, filed in this court on October 18, 2005, as Resp.'s Ex. J. This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

his minor child (Pen.Code, § 273.5, subd. (a)).[3]  The information further alleged, as to both counts, that Ford had a prior strike conviction, a prior serious felony conviction ( § 667, subd. (a)(1)) and a prior prison term, and, as to count two, a prior conviction for violation of section 273.5 (see § 273.5, subd. (e)).  An amended information added two on-bail enhancement allegations.  Ford was tried before a jury.

At trial, Vallejo Police Officer Les Bottomley testified that he was dispatched to Shirley Rippee's house about 11:00 a.m. on April 5, 2002.  There he contacted Rippee and her granddaughter, victim Sunshine Easter, who was upset, had been crying, and had numerous welts on her arms.  When the officer asked why the police had been called, Easter responded that she had been assaulted by Ford, her former boyfriend and father of her daughter.

According to Officer Bottomley's testimony, Easter explained that she had been out all night and arrived home around 9:00 a.m.  Ford was waiting for her just inside the door.  When she tried to leave, Ford grabbed her hair and dragged her back into her residence.  Then he whipped her with an electrical cord numerous times on the arms, legs, and other parts of her body.  He also called her names and swore at her.  Ford remained at her residence for about one and one-half hours more, continuing to belittle her and call her names.

Officer Bottomley noticed that Easter was distraught as she recounted these events.  He did not recover the electrical cord or inspect Easter's residence, but noted that her injuries were consistent with a doubled-up cord.  At the scene he observed and photographed the welts on her arms and legs, and the photographs were introduced into evidence at trial.

Rippee testified that Easter had returned home from a date about 9:00 a.m.  As Easter passed through Rippee's house to get to her own residence, Easter appeared to be in a "really good mood" and was "jolly" and "laughing."  Later that morning, while Rippee was in the laundry room, Rippee heard Ford's and Easter's voices outside.  Ford sounded angry, and Easter sounded upset.  When Easter entered Rippee's home, Rippee noticed that her face was red, she was crying, and she had bloody bruises on her arms and legs that she did not have earlier that morning.  Easter left the house and gave Ford a sports bag, and Ford drove away.  Rippee then called the police.

Rippee also confirmed that Ford was the father of Easter's daughter, who was two and a half years old at the time.

---

[3]  Except where otherwise indicated, all statutory references hereafter are to the Penal Code.

Among the other trial witnesses, Vallejo Police Detective David McGraw testified that he spoke to Easter about the April 5, 2002, incident, and opined that the injuries she showed him were consistent with being struck with an electrical cord. Robert Oettinger, a Benicia police officer, testified that Easter had told him of an earlier incident in which Ford threw a speaker magnet at a car Easter was in, breaking the window and injuring her face.

The jury found Ford not guilty of burglary, but guilty of corporal injury on the mother of his child. Ford waived jury trial on the prior conviction and on-bail allegations. Except for one on-bail enhancement, the court found the enhancement allegations true.

**C. Sentencing**

The court sentenced Ford in case No. 160374 to the four-year middle term for corporal injury on the mother of his child, doubled to eight years pursuant to the three strikes law. In case No. 160027, Ford was sentenced to one-third of the middle term, doubled to 16 months, for methamphetamine possession, and two additional years for the two prior prison term enhancements, imposed consecutively. The court ordered the sentences in the two cases to run consecutively, resulting in an aggregate sentence of 11 years 4 months.

Petitioner's judgment of conviction was affirmed on appeal by the California Court of Appeal for the First Appellate District. Answer, Ex. J. The California Supreme Court subsequently denied review. Answer, Ex. K.

## II.    Analysis

### A.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

////

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B.  Petitioner's Sixth Amendment Claim**

Petitioner claims that the trial court violated his Sixth Amendment right to confront the witnesses against him when it admitted into evidence the victim's hearsay statements to Officer Bottomley. Form Pet. at 5. Citing *Crawford v. Washington*, 541 U.S. 36 (2004), petitioner argues that the statements were "testimonial," and therefore inadmissible because he did not have a prior opportunity to cross-examine the victim. *Id.* Respondent contends, as he did in

5

state court, that the statements were not "testimonial" and therefore their admission into evidence did not violate the Sixth Amendment.  Mem. of P. & A. in Supp. of Answer ("P&A"), at 7-9. Respondent also argues that any error in admitting the statements was harmless.  *Id.* at 8-9.

## 1. **State Court Opinion**

The California Court of Appeal rejected this claim, reasoning as follows:

> Ford's appeal is limited to assertions of error in case No. 160374. As mentioned, he contends Officer Bottomley's testimony concerning victim Easter's out-of-court statement was (1) admitted in violation of Evidence Code section 1370, because it was not sufficiently shown that she was unavailable as a witness, and (2) violated Ford's Sixth Amendment right to confront and cross-examine adverse witnesses.  He also claims ineffective assistance of counsel, if his trial attorney waived his constitutional objection to Easter's statement.[4]

> **A. Background on Admission of Easter's Statement**

> Easter had refused to testify at the preliminary hearing based on her Fifth Amendment privilege against self-incrimination.  She was subpoenaed to testify at trial, but did not appear.  The People sought to proceed without her, requesting that her statements to Officer Bottomley be admitted under Evidence Code section 1370 [exempting statements describing the infliction of physical injury from the hearsay rule].  Defense counsel objected on the ground that the requirements of Evidence Code section 1370 had not been met, because the prosecutor had not shown reasonable diligence in attempting to procure Easter's attendance.  He also objected that Easter's statement was unreliable, because her assertion of the Fifth Amendment privilege at the preliminary hearing suggested she had a motive to lie about the incident.  He did not object to the evidence on constitutional grounds.  The court granted the prosecutor's motion, and Officer Bottomley testified at trial to Easter's statements, as set forth ante.

> **B. Evidence Code Section 1370: Unavailability Under Evidence Code Section 240**

> As relevant here, Evidence Code section 1370 provides a hearsay exception for statements that explain the infliction of physical harm upon the declarant, if (1) the declarant is unavailable as a

---

[4] Ford also states in his opening brief on appeal that the admission of Officer Bottomley's testimony in this regard violated his due process rights under the Fifth Amendment. He does not, however, present any argument on this point.

witness under Evidence Code section 240 and (2) the statement was made under circumstances that would indicate trustworthiness.[5]

Ford contends the People failed to show Easter was "unavailable as a witness pursuant to [Evidence Code] Section 240."  (Evid. Code, § 1370, subd. (a)(2).)  Except under circumstances not present here, a declarant is "unavailable as a witness" under Evidence Code section 240 if the declarant is, inter alia, any of the following: [¶] (1) Exempted or precluded on the ground of privilege from testifying concerning the matter to which his or her statement is relevant. [¶] ... [¶] (4) Absent from the hearing and the court is unable to compel his or her attendance by its process. [¶] (5) *Absent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process.*"  (Evid. Code, § 240, subd. (a), italics added.)

Although Easter asserted her Fifth Amendment right against self-incrimination at the preliminary hearing, respondent does not contend her unavailability for trial was established on that basis.  Rather, respondent asserts (and the trial court ruled) that the People demonstrated unavailability under Evidence Code section 240, subdivision (a)(5), in that Easter was "[a]bsent from the hearing" and the People had "exercised reasonable diligence but [were] unable to procure [Easter's] attendance by the court's process."  (Evid. Code, § 240, subd. (a)(5).)

The parties debate the standard we should apply in reviewing the trial court's determination.  Both agree that, where a defendant's constitutional rights are affected, a trial court's determination whether the prosecution has exercised reasonable diligence in this context is subject to independent review.  (*People v. Cromer* (2001) 24 Cal.4th 889, 899-901, 103 Cal.Rptr.2d 23, 15 P.3d 243 (*Cromer*).)  Respondent argues, however, that the abuse of discretion standard is appropriate where a constitutional right is not affected, asserting that is the case here.  We need not decide this question, because under either standard Easter was shown to be unavailable as a witness.

////

---

[5]  Evidence Code section 1370, subdivision (a), reads: "Evidence of a statement by a declarant is not made inadmissible by the hearsay rule if all of the following conditions are met: [¶] (1) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant. [¶] (2) The declarant is unavailable as a witness pursuant to [Evidence Code] Section 240.[¶] (3) The statement was made at or near the time of the infliction or threat of physical injury.... [¶] (4) The statement was made under circumstances that would indicate its trustworthiness. [¶] (5) The statement was made in writing, was electronically recorded, or made to a physician, nurse, paramedic, or to a law enforcement official."

A hearing on Easter's availability was held before trial on March 25, 2003. The court noted that trial was originally scheduled to begin on March 18.[6] Terry Norvell, an investigator for the Solano County District Attorney's Office, testified that several times before February 10, 2003, she had attempted to serve Easter with a trial subpoena at a residence she was believed to inhabit at the rear of Rippee's house. Norvell then learned that Easter did not live there anymore, and obtained from Rippee a description of the location of Easter's new residence. Norvell served the trial subpoena upon Easter on February 10, 2003, still a month before the trial, at an address on Hampshire Street. She informed Easter that the subpoena was a court order and Easter needed to appear as instructed. When Easter failed to appear for trial on March 18, the court issued a warrant for her arrest at the prosecutor's request. (According to the prosecutor, service of this warrant was attempted but not accomplished.) On March 19, the trial was continued to March 20, and from March 20 to March 25, due to Easter's failure to appear. On March 24, a process server advised Norvell that she had seen Easter at Rippee's house. Norvell and three Vallejo police officers went to that location, but did not find Easter. In addition, the prosecutor represented, on March 24 she talked to Easter, who indicated she would appear at the trial. The prosecutor had also been in contact with Easter's grandmother for over a month, making her aware of the need for Easter to appear.

By serving Easter with a subpoena to testify at trial, obtaining and attempting to serve an arrest warrant when she failed to appear, and urging Easter and her grandmother of Easter's need to appear at trial, the People exercised reasonable diligence to obtain Easter's attendance at trial.

Our conclusion is consistent with *People v. Perez* (1989) 207 Cal.App.3d 431, 435, 254 Cal.Rptr. 869. There, the prosecution served a subpoena on a witness by mail. The witness called the prosecutor and said she would be available to testify at trial. Two days before trial, the prosecutor learned the witness was on vacation. An attempt to effect personal service failed. Since service by mail was proper, however, the witness was subject to the court's process. (*Id.* at p. 436, 254 Cal.Rptr. 869.) By serving the subpoena, the *Perez* court ruled, the prosecution had met its burden of showing due diligence in its attempts to secure the witness's attendance at trial. (*Id.* at p. 437, 254 Cal.Rptr. 869.)

---

[6] The court summarized as follows: "[T]he case was actually supposed to start trial on the 18th of March [2003], didn't start that day because I was concluding a trial from the preceding week, then it was supposed to start on the 19th; the victim wasn't present, and we tried again on the 20th and the victim still wasn't present, and now we're trying today to get this trial started; it's a no time waiver. The last day for trial is April 1st."

Ford's reliance on *Cromer, supra*, 24 Cal.4th 889, 103 Cal.Rptr.2d 23, 15 P.3d 243, is misplaced.  In *Cromer*, the court concluded that the People failed to establish diligence because: although trial was originally scheduled for September 1997, the prosecution made no serious effort to locate the witness until December 1997; after the case was called for trial in January 1998, the prosecution obtained information that the witness was living with her mother in San Bernardino, but prosecution investigators waited two days to check out this information; and when an investigator finally went to the mother's residence during jury selection and learned that the mother would return the next day, the investigator never bothered to return to speak to her, even though she was the person most likely to know where the witness was.  (*Id.* at p. 904, 103 Cal.Rptr.2d 23, 15 P.3d 243.)  Thus, while in *Cromer* the prosecution made no real effort to find the witness until two months after trial was scheduled, here the People actually served Easter with a trial subpoena a month before trial.  Further, in *Cromer* investigators waited for two days after the case was called to check out a lead concerning the witness's whereabouts; here, investigators promptly pursued every lead they had.  Even if the prosecutor in this case could have done more to keep in touch with Easter in the days before trial, that in itself does not make the prosecution's efforts unreasonable.

Ford has failed to establish that the court erred in concluding the People exercised due diligence under Evidence Code section 240 for the purpose of admitting evidence pursuant to Evidence Code section 1370.

## C.  Sixth Amendment Confrontation Clause

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  This federal constitutional right to confront adverse witnesses in a criminal prosecution applies to the states.  (*Pointer v. Texas* (1965) 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.)  It is also guaranteed by the California Constitution (Cal. Const., art. I, § 15) and by statute (§ 686).  The right of confrontation and cross-examination of adverse witnesses has been deemed an essential ingredient to a fair trial.  (*People v. Brown* (2003) 31 Cal.4th 518, 538, 3 Cal.Rptr.3d 145, 73 P.3d 1137.)

Relying on the United States Supreme Court's recent decision in *Crawford v. Washington* (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (*Crawford*), Ford contends that Officer Bottomley's testimony as to Easter's hearsay statements violated his Sixth Amendment right to confront and cross-examine adverse witnesses.  Respondent counters that Ford waived his right to challenge the evidence on constitutional grounds and that, in any event, the admission of the evidence did not constitute reversible error.

9

**1. Waiver**

A claim based on a purported violation of the confrontation clause must be timely asserted at trial or it is waived on appeal.   (Evid. Code, § 353; *People v. Catlin* (2001) 26 Cal.4th 81, 138, fn. 14, 109 Cal.Rptr.2d 31, 26 P.3d 357; *People v. Alvarez* (1996) 14 Cal.4th 155, 186, 58 Cal.Rptr.2d 385, 926 P.2d 365 [*declining review on confrontation clause grounds*]; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1118, 36 Cal.Rptr.2d 235, 885 P.2d 1.)  No particular form of objection is required to preserve the issue for appeal.  (*People v. Gibson* (1976) 56 Cal.App.3d 119, 137, 128 Cal.Rptr. 302.)  However, the objection must be sufficient to enable the prosecution to explain the basis for admission of the evidence and to give the trial judge an opportunity to rule on the issue.  (*People v. Williams* (1988) 44 Cal.3d 883, 906, 245 Cal.Rptr. 336, 751 P.2d 395.)

In the matter before us, Ford's trial counsel objected to the admission of Easter's statements to Officer Bottomley on the ground that the requirements of Evidence Code section 1370 were not met.  He did not, however, object on the ground that admission of the statements would violate Ford's right to confront and cross-examine witnesses.  He made no mention of this constitutional right at all.

Ford contends his defense counsel implicitly objected on confrontation clause grounds, because he argued that Easter's statements were unreliable due to her unavailability at trial.  This reference to unreliability and unavailability, he insists, must be interpreted to refer to his inability to cross-examine her, and therefore implicated his confrontation clause rights.

We find Ford's arguments rather disingenuous in this regard, as the record is clear that trial counsel's objections were rooted exclusively in Evidence Code section 1370.  Initially, counsel argued the prosecution had failed to show due diligence in procuring Easter's appearance at trial.  Then the discussion turned to the "trustworthiness" element of Evidence Code section 1370, subdivision (a)(4).  In particular, when the court asked defense counsel whether he thought any portion of Easter's statements failed to meet the criteria of Evidence Code section 1370, subdivision (a)(4), counsel responded:  "Um, yes, Your Honor. [¶] Um, I contend that all of them, um, may not meet that criteria; and the basis for that is, um, if the Court remembers, under (b), um, it lays out in 1370(b) regarding trustworthiness, and (b) has a motive for statement and statement of any bias or motive, and I would indicate here, um, we know this witness took the Fifth at the preliminary hearing.  [¶]  Um, she may or may not be covering something up that could be a motive to lie or fabricate here."  When the court pointed out Easter's motive to fabricate was purely a matter of counsel's speculation, counsel replied:  "Um, it is is, but,

um, it's as much speculation that she's being honest I guess as well, Your Honor.  [¶]  Um, neither one of them has in fact been proven or will be proven since she is unavailable."  By no means did this colloquy suggest any objection on the grounds of Ford's constitutional right to confront and cross-examine adverse witnesses.

Nevertheless, we have discretion to review a constitutional claim if the question is one of law.  (*People v. Carr* (1974) 43 Cal.App.3d 441, 445, 117 Cal.Rptr. 714; *People v. Blanco* (1992) 10 Cal.App.4th 1167, 1172-1173, 13 Cal.Rptr.2d 176.)  It is a legal question whether admission of Easter's hearsay statements under Evidence Code section 1370 is consistent with the confrontation clause.  We are mindful, as well, that "[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence."  (*People v. Welch* (1993) 5 Cal.4th 228, 237-238, 19 Cal.Rptr.2d 520, 851 P.2d 802.)  We will exercise our discretion to review the trial court's ruling.

**2. Crawford**

In *Crawford, supra*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court ruled that the confrontation clause prohibits the introduction of out-of-court testimonial statements at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.  (*Crawford, supra*, at p. 1374.)  In so holding, the court overruled its earlier decision in *Ohio v. Roberts* (1980) 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (*Roberts*), which had held that the confrontation clause did not bar admission of an unavailable witness's statement against a criminal defendant if the statement bore an adequate "indicia of reliability," as by falling within a firmly rooted hearsay exception or evincing particularized guarantees of trustworthiness (*Roberts, supra*, at p. 66; *Crawford, supra*, at pp. 1358, 1374.)  The *Crawford* court explained: "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  (*Crawford, supra*, at p. 1374.)  Thus, testimonial hearsay is admissible only if the declarant is unavailable and there has been a prior opportunity for cross-examination of the declarant.  (*Ibid.*)

There is no contention in this matter that Ford had any pretrial opportunity to cross-examine Easter regarding her statement to Officer Bottomley.  In fact, Easter refused to testify at the preliminary hearing.  However, respondent argues that *Crawford* does not apply, because Easter's statement was not "testimonial." (*See Crawford, supra*, 541 U.S. at p. ----, 124 S.Ct. at p. 1374; *People v. Cervantes* (2004) 118 Cal.App.4th 162, 12 Cal.Rptr.3d 774.) We agree.

11

In *Crawford*, the court did not "spell out a comprehensive definition of 'testimonial,'" but declared that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." (*Crawford, supra*, 541 U.S. at p. ----, 124 S.Ct. at p. 1374, italics added.) The court explained: "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." (*Id.* at p. 1364.)

Potentially applicable to Easter's statements is the concept of police interrogation. In *Crawford*, the witness's statement was deemed the result of interrogation where it was recorded and "knowingly given in response to structured police questioning." (*Crawford, supra*, 541 U.S. at p. ----, fn. 4, 124 S.Ct. at p. 1365, fn. 4.) The court suggested a broader meaning, however, in stating it used the term "interrogation" in its "colloquial, rather than any technical legal, sense." (*Ibid.*) Police interrogations implicate core Sixth Amendment concerns, the court explained, because police officers have adopted the investigative functions that were previously handled by justices of the peace in England. (*Crawford, supra*, at pp. 1364-1365.) "Justices of the peace conducting examinations under the Marian statutes ... had an essentially investigative and prosecutorial function. [Citations.] England did not have a professional police force until the 19th century [citation], so it is not surprising that other government officers performed the investigative functions now associated primarily with the police." (*Crawford, supra*, at p. 1365.)

Thus, statements obtained during police interrogations are testimonial essentially because police officers who obtain a statement during an interrogation are performing investigative and evidence-producing functions formerly handled by justices of the peace. The use of such an out-of-court statement to convict a defendant implicates the central concerns underlying the confrontation clause. (*Crawford, supra*, 541 U.S. at p. ----, 124 S.Ct. at p. 1365.)

Applying this rationale to statements obtained through police officer questioning at or near the scene of a crime, we conclude statements are testimonial under *Crawford* if they were obtained by an officer acting in an investigative capacity to produce evidence in anticipation of a potential criminal prosecution. The last part of this formulation – "in anticipation of a potential criminal prosecution" – reflects *Crawford's* emphasis on purposeful conduct by government officers. (*See, e.g., Crawford, supra*, 541 U.S. at p. ----, fn. 7, 124 S.Ct. at p. 1367, fn. 7 ["[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for

12

prosecutorial abuse ...."].) The production of evidence for use in a potential prosecution through purposeful questioning has greater implications for core confrontation clause concerns than does questioning incidental to other law enforcement objectives, such as exigent safety, security, and medical concerns.

In the matter before us, the hearsay statements to which Officer Bottomley testified at trial were given by Easter after her grandmother had summoned the police and the officer inquired why the police had been called.  When he arrived at the house, the officer encountered Easter, visibly upset and wounded.  The area was unsecured, and the situation was uncertain.  There is no indication that the officer knew the nature of the reported crime or the identity of the assailant; whether the assailant was on or near the premises; whether the assailant possessed any weapons that could pose a danger to the officers or others; or whether Easter or others required immediate medical attention.  Easter's statement to Officer Bottomley was not the product of structured questioning, nor was it recorded.  More importantly, the officer was not acting in an investigative capacity to produce evidence in anticipation of a potential criminal prosecution, but to ascertain on a preliminary basis the scene to which he was summoned.

Easter's statement is similar to a statement obtained by a police officer dispatched to the scene after a 911 call in *People v. Corella* (2004) 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770 (*Corella*).  The court in *Corella* concluded that the statement was not testimonial, holding that the victim's statement "did not become part of a police interrogation merely because [the responding officer] was an officer and obtained information from [the victim].  Preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an 'interrogation.'"  (*Id.* at p. 469, 18 Cal.Rptr.3d 770.)[7]

Based on the record before us, we conclude that Officer Bottomley was not producing evidence in anticipation of a potential criminal prosecution in eliciting basic facts from Easter about the nature and cause of her injuries.  Easter's statement was not testimonial

---

[7]   To the extent *Corella* can be read to limit the concept of testimonial hearsay in the police questioning context to the type of formal interrogation in *Crawford*, we disagree.  (*See Corella, supra,* 122 Cal.App.4th at p. 469, 18 Cal.Rptr.3d 770.)  Nor do we adopt a blanket rule that all statements obtained from victims or witnesses by police officers responding to emergency calls are necessarily nontestimonial.  The determination will depend on the facts and circumstances of the particular case.  We also note that our Supreme Court has granted review in two cases addressing whether statements obtained through police officer questioning in the field are testimonial.  (*See People v. Cage, previously published at* 120 Cal.App.4th 770, 15 Cal.Rptr.3d 846, *review granted and opinion superseded* Oct. 13, 2004, S127344; *People v. Adams*, previously published at 120 Cal.App.4th 1065, 16 Cal.Rptr.3d 237, *review granted and opinion superseded* Oct. 13, 2004, S127373.)

13

1    within the meaning of Crawford, and Ford has failed to establish
     error in this regard.[8]
2

3  Opinion at 4-13.

4              **2.  Applicable Law**

5       The Sixth Amendment to the United States Constitution grants a criminal defendant the

6  right "to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  In 2004, the

7  United States Supreme Court held that the Confrontation Clause bars the state from introducing

8  into evidence out-of-court statements which are testimonial in nature unless the witness is

9  unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of

10  whether such statements are deemed reliable.  *Crawford v. Washington*, 541 U.S. 36 (2004).  The

11  *Crawford* rule applies only to hearsay statements that are "testimonial" and does not bar the

12  admission of non-testimonial hearsay statements.  *Id.* at 42, 51, 68.  *See also Whorton v.*

13  *Bockting*, 549 U.S. 406, 420 (2007) ("the Confrontation Clause has no application to" an

14  "out-of-court nontestimonial statement.")  Although the *Crawford* court declined to provide a

15  comprehensive definition of the term "testimonial," it stated that "[s]tatements taken by police

16  officers in the course of interrogations are . . . testimonial under even a narrow standard."

17  *Crawford*, 541 U.S. at 52.  The *Crawford* decision applies to this case because it was decided

18  prior to petitioner's appeal.  *Winzer v. Hall*, 494 F.3d 1192, 1194 (9th Cir. 2007).

19       In *Davis v. Washington*, 547 U.S. 813, 826-830 (2006), a case decided after petitioner's

20  appeal, the United States Supreme Court elaborated on the holding in *Crawford*,  exploring the

21  parameters of statements which are "testimonial" in nature.[9]  *Davis* involved two consolidated

22

23       [8]  Ford does not argue that there was a confrontation clause violation if Easter's hearsay
     statement was not testimonial.  We therefore need not, and do not, consider this issue.  Nor do
24  we consider what Sixth Amendment test, if any, might apply to nontestimonial hearsay.

25       [9]  The disputed statements in *Crawford* were made and recorded while the witness was in
     police custody, after having been given *Miranda* warnings as a possible suspect herself.  The
26  Supreme Court held that statements made under those circumstances qualified as "testimonial

                                14

cases: *Davis v. Washington* and *Hammon v. Indiana*.  Addressing the facts in *Davis*, the Court considered the admissibility of a victim's 911 call.  547 U.S. at 826-30.  Addressing the facts of *Hammon*, the Court considered statements made by the victim to police officers who responded to her home after receiving reports of a domestic disturbance.  *Id.* at 829-32.  As in this case, *Davis* involved police interrogation of domestic violence victims who thereafter failed to appear in court.  The Supreme Court held that statements are non-testimonial (and therefore not subject to the requirements set forth in *Crawford*) "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" but are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Id.* at 822.  The court explained that

> [w]hen we said in *Crawford* . . . that 'interrogations by law enforcement officers fall squarely within [the] class' of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator.  The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial.

*Id.* at 826.

Applying these principles, the *Davis* Court concluded that the statements in the 911 call were not testimonial.  *Id.* at 826-29.  The court noted that the victim who made the 911 call was speaking about events as they were "actually happening," rather than "describing past events," and that a reasonable listener would have recognized the 911 caller was "facing an ongoing emergency."  *Id.* at 827.  The court also noted that an "initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to establis[h] or prov[e]' some

_____

. . . under any definition."  541 U.S. at 52.

past fact, but to describe current circumstances requiring police assistance." *Id.*  The court

explained that, in order for a statement to be testimonial, the declarant must have had a

reasonable expectation that his/her statements would be used in a later prosecution.  *Id.* at 828.

The court stated, "No 'witness' goes into court to proclaim an emergency and seek help." *Id.* at

828.

In the *Hammon* portion of the case, police responding to a report of domestic violence

spoke to Hammon's wife, the victim.  The police separated the victim from her husband, and she

admitted to the officers that she had been physically abused.  *Id.* at 819-20.  The officer then had

the victim fill out and sign an affidavit describing the assault.  *Id.* at 820.  The Supreme Court

concluded that the victim's statements were testimonial because it was "entirely clear from the

circumstances that the interrogation was part of an investigation into possibly criminal past

conduct . . . ."  *Id.* at 829.  There was no emergency in progress, and when the officer elicited the

challenged statements, "he was not seeking to determine (as in *Davis* ) 'what is happening,' but

rather 'what happened.'"  *Id.* at 830.  "Objectively viewed, the primary, if not indeed the sole,

purpose of the interrogation was to investigate a possible crime – which is, of course, precisely

what the officer *should* have done." (emphasis in original.)  *Id.*  The court also concluded that

because the witness's statements "were neither a cry for help nor the provision of information

enabling officers immediately to end a threatening situation, the fact that they were given at an

alleged crime scene and were 'initial inquiries' is immaterial."  *Id.* at 832.  The court explained

that "[s]uch statements under official interrogation are an obvious substitute for live testimony,

because they do precisely what a witness does on direct examination; they are inherently

testimonial."  *Id.* at 830.

If the court concludes that the statements were testimonial, Confrontation Clause

violations are subject to harmless error analysis.  *Whelchel v. Washington*, 232 F.3d 1197,

1205-06 (9th Cir. 2000).  "In the context of habeas petitions, the standard of review is whether a

given error 'had substantial and injurious effect or influence in determining the jury's verdict.'"

1  *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S.

2  619, 637 (1993)).  Factors to be considered when assessing the harmlessness of a Confrontation

3  Clause violation include the importance of the testimony, whether the testimony was cumulative,

4  the presence or absence of evidence corroborating or contradicting the testimony, the extent of

5  cross-examination permitted, and the overall strength of the prosecution's case.  *Delaware v.*

6  *Van Arsdall*, 475 U.S. 673, 684 (1986).[10]

7        **3. <u>Analysis</u>**

8        The California Court of Appeal determined that the victim's statements to Officer

9  Bottomley were not "testimonial" in nature and were therefore not subject to the ruling in

10  *Crawford*.  Specifically, the court concluded that the victim's statements were not the result of

11  police interrogation because Officer Bottomley was not acting in an investigative or evidence-

12  gathering capacity when he spoke to the victim, but was simply asking preliminary questions in

13  an attempt to assess "the scene to which he was summoned."  Opinion at 12.  The court also

14  concluded that Officer Bottomley was "not producing evidence in anticipation of a potential

15  criminal prosecution" when he spoke to the victim but was simply asking about the "nature and

16  cause of her injuries."  *Id.*

17        This court must determine whether the state court adjudication of petitioner's Sixth

18  Amendment claim involved an "unreasonable application" of clearly established law when it

19  concluded that the victim's statements to Officer Bottomley were not obtained by police

20  interrogation and were therefore not "testimonial" in nature.  28 U.S.C. § 2254(d)(1).  In

21  *Yarborough v. Alvarado*, 541 U.S. 652, 660-665 the United States Supreme Court engaged in a

22  lengthy discussion regarding the standards applicable to a determination of whether a state court

23  adjudication of a claim involves an "unreasonable application of clearly established law" under

24

25        [10]  Although *Van Arsdall* involved a direct appeal and not a habeas action, "there is
nothing in the opinion or logic of *Van Arsdall* that limits the use of these factors to direct
26  review."  *Whelchel*, 232 F.3d at 1206.

1    circumstances similar to the situation in this case.  The court explained that

2          [f]or purposes of 28 U.S.C. § 2254(d)(1), clearly established law as
           determined by this Court 'refers to the holdings, as opposed to the
3          dicta, of this Court's decisions as of the time of the relevant state-
           court decision.  We look for 'the governing legal principle or
4          principles set forth by the Supreme Court at the time the state court
           renders its decision.  (citations omitted.)
5

6    *Id.* at 660-61.  The court also made the following comments:

7          The term '"unreasonable'" is "a common term in the legal world
           and, accordingly, federal judges are familiar with its meaning."
8          (citation omitted.)  At the same time, the range of reasonable
           judgment can depend in part on the nature of the relevant rule.  If a
9          legal rule is specific, the range may be narrow.  Applications of the
           rule may be plainly correct or incorrect.  Other rules are more
10         general, and their meaning must emerge in application over the
           course of time.  Applying a general standard to a specific case can
11         demand a substantial element of judgment.  As a result, evaluating
           whether a rule application was unreasonable requires considering
12         the rule's specificity.  The more general the rule, the more leeway
           courts have in reaching outcomes in case-by-case determinations.
13

14   *Id.* at 664.

15         At the time of the state court decision on petitioner's appeal, the *Davis* decision had not

16   yet been issued.  Under *Crawford*, the law in existence at that time, the definition of

17   "testimonial" appeared to be a broad standard that could be applied to a variety of factual

18   situations.  Indeed, the Supreme Court specifically suggested in *Crawford* that the term

19   "interrogation" had a broad, and not a narrow meaning.  *Id.* at 11.[11]  Because the definition was

20   defined in fairly general terms, the state court had more leeway to determine whether specific

21   statements were testimonial or not.  *Yarborough*, 541 U.S. at 664.  Under these circumstances,

22   this court concludes that "fairminded jurors could disagree" over whether the victim's statements

23   to Officer Bottomley were the result of police interrogation, and therefore testimonial, or

24
          [11]  The *Crawford* court stated: "[j]ust as various definitions of "testimonial" exist, one can
25   imagine various definitions of "interrogation," and we need not select among them in this case
     . . . Sylvia's recorded statement, knowingly given in response to structured police questioning,
26   qualifies under any conceivable definition."  *Crawford*, 541 U.S. at 53.

                                              18

1   whether they were simply the result of preliminary fact-finding, and therefore not testimonial.

2   *See Yarborough*, 541 U.S. at 664.  For the reasons described by the California Court of Appeal,

3   it is reasonable to conclude that the victim's statements to Officer Bottomley were not

4   "testimonial," as that term is defined in *Crawford*.  Therefore, admission of these statements into

5   evidence did not run afoul of the Sixth Amendment.

6        On the other hand, if the state court's decision is an unreasonable application of

7   *Crawford*, this court would be required to resolve petitioner's Sixth Amendment claim *de novo*.

8   *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (when "the requirement set forth in

9   § 2254(d)(1) is satisfied[, a] federal court must then resolve the [constitutional] claim without the

10  deference AEDPA otherwise requires"); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (reviewing

11  the prejudice requirement for an ineffective assistance of counsel claim de novo after identifying

12  a § 2254(d)(1) error in the state court's evaluation of the performance requirement); *Frantz v.*

13  *Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) ("where the analysis on federal habeas, in whatever

14  order conducted, results in the conclusion that § 2254(d)(1) is satisfied, then federal habeas

15  courts must review the substantive constitutionality of the state custody de novo").  Under *de*

16  *novo* review, petitioner's argument that his Sixth Amendment rights were violated by the

17  admission into evidence of the victim's statements to Officer Bottomley has considerable merit.

18        A comparison of the facts in this case with the facts in *Davis (Hammon)*, compels the

19  conclusion that the victim's statements were testimonial and should not have been admitted into

20  evidence at petitioner's trial.  As in *Hammon*, the victim's statements were made to a police

21  officer during investigatory questioning after the receipt of a 911 call.  The primary purpose of

22  the interrogation was to "establish or prove past events potentially relevant to later criminal

23  prosecution." 547 U.S. at 822.  As in *Davis*, the victim's statements "deliberately recounted, in

24  response to police questioning, how potentially criminal past events began and progressed." *Id.*

25  at 830.  Both statements "took place some time after the events described were over." *Id.*  The

26  statements made by the victim to Officer Bottomley were certainly "potentially" relevant to later

19

1  criminal proceedings.  The statements were also created "under circumstances which would lead

2  an objective witness reasonably to believe that they would be available for use at a later trial,"

3  which in fact they were.  *Crawford*, 541 U.S. at 52.  This belief would have been bolstered by

4  the fact that Officer Bottomley took pictures of the victim's injuries at the time of the

5  questioning and asked the victim for a description of the perpetrator.  Reporter's Transcript on

6  Appeal ("RT") at 68, 73-74.  Bottomley later used that information to fill out a "suspect sheet."

7  *Id.* at 80.  He stated that he had been trained to take photographs and collect evidence of possible

8  crimes.  *Id.* at 98-99.  As in *Davis*, the fact that the victim's statements were given in response to

9  "initial inquiries" was "immaterial" because the statements "were neither a cry for help nor the

10  provision of information enabling officers immediately to end a threatening situation."  *Davis*,

11  547 U.S. at 832.  Similar to the situation in *Davis*, the victim's statements in this case were taken

12  by police at the scene of a crime in the absence of an ongoing emergency.  Under these

13  circumstances, the victim's statements were "testimonial" in nature.  *Id.* at 829-32.  The state

14  courts' conclusion that they were not is contrary to the holding in *Davis*.  *Early v. Packer*, 537

15  U.S. at 8.

16       However, assuming *arguendo* that petitioner's Sixth Amendment rights were violated by

17  the admission into evidence of the victim's statements to Officer Bottomley, this court concludes

18  that the trial court's error was harmless.  Petitioner was convicted of a violation of Cal. Pen.

19  Code § 273.5(a).  That statute provides that:

> Any person who willfully inflicts upon a person who is his or her
> spouse, former spouse, cohabitant, former cohabitant, or the
> mother or father of his or her child, corporal injury resulting in a
> traumatic condition, is guilty of a felony, and upon conviction
> thereof shall be punished by imprisonment in the state prison for
> two, three, or four years, or in a county jail for not more than one
> year, or by a fine of up to six thousand dollars ($6,000) or by both
> that fine and imprisonment.

25  It was established through the testimony of Ms. Rippee, the victim's grandmother, that petitioner

26  was the father of the victim's child and that the victim had suffered "injury resulting in a

20

1    traumatic condition." *See* Cal. Pen. Code § 273.5(d) ("As used in this section, "traumatic

2    condition" means a condition of the body, such as a wound or external or internal injury, whether

3    of a minor or serious nature, caused by a physical force").  Accordingly, the essential question is

4    whether there was sufficient evidence petitioner was the perpetrator of the assault independent of

5    the victim's statements to Officer Bottomley.

6         Ms. Rippee testified that she saw the victim come into her house at around 9:00 a.m.  RT

7    at 106.  The victim was "in a really good mood and jolly, laughing." *Id.*  Later that day, the

8    victim came back into her grandmother's house crying and with bruises and marks on her body

9    that had not been there earlier.  *Id.* at 107-08.  The victim went out to the sidewalk and gave

10   petitioner a sports bag.  *Id.* at 109-10.  She then came back to the house, sobbing and crying.  *Id.*

11   at 111.  The victim told her grandmother what had occurred.  *Id.*  Ms. Rippee had heard

12   petitioner talking with the victim earlier.  *Id.* at 116.  Although she didn't hear what was being

13   said, she could tell that petitioner was angry and the victim was upset.  *Id.* at 116-18.  The jury

14   was also informed through the testimony of another police officer that petitioner had assaulted

15   the victim on a previous occasion.  *Id.* at 191-93.

16        In light of the above-described testimony, this court concludes that the trial court's error

17   in allowing Officer Bottomley to testify to the statements made to him by the victim was

18   harmless.  Rippee's testimony essentially corroborated the victim's statements to Bottomley and

19   firmly established the identity of the perpetrator.  The victim's statements were largely

20   cumulative of Rippee's testimony.  The prosecution's case against petitioner was strong.  Under

21   these circumstances, the erroneous admission of the victim's statements could not have had a

22   substantial and injurious effect or influence in determining the jury's verdict.

23        Accordingly, for all of the reasons set forth above, petitioner is not entitled to relief on

24   his Sixth Amendment claim.

25   ////

26   ////

### C. Petitioner's Fourteenth Amendment Claim

Petitioner also claims that the trial court violated his Fourteenth Amendment right to due process when it admitted into evidence the victim's hearsay statements to Officer Bottomley. Form Pet. at 5; Traverse at 10-13.

Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). For the reasons expressed in connection with petitioner's Sixth Amendment claim, petitioner has failed to demonstrate that the trial court's ruling with respect to the admissibility of the victim's statements to Officer Bottomley rendered his trial fundamentally unfair. There is no reasonable probability the result of the proceedings would have been different if the victim's statements had been excluded from evidence. Accordingly, petitioner is not entitled to relief on this claim.[12]

### III. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

---

[12] Petitioner originally included a claim that his trial counsel rendered ineffective assistance when he failed to object, on constitutional grounds, to the admission of the victim's statements to Officer Bottomley. However, petitioner withdrew that claim by motion filed November 28, 2005. In any event, petitioner has failed to demonstrate prejudice resulting from the actions of his trial counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, any such claim should be denied.

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  July 20, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE